## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AYVA BEZANSON, ERIC BEZANSON, )<br>And AMIE BEZANSON, )<br> )<br>    Plaintiffs, )<br> )<br> v. )<br> )<br>AMESBURY PUBLIC SCHOOLS, CITY )<br>OF AMESBURY and RACHAEL DOBBS, )<br> )<br>    Defendants )<br> ) | CIVIL ACTION<br>NO:    1:25-cv-11270 |

### PLAINTIFFS' AMENDED COMPLAINT AND CLAIM FOR JURY TRIAL

### HISTORY OF CASE

This action arises from the mistreatment of the Plaintiff, Ms. Ayva Bezanson, by the defendants during her time at in the Amesbury Public Schools System, especially while attending Amesbury High School. Ayva was subjected to repeated and constant bullying on the basis of her sex and disability, which was severe and pervasive. She was called a whore, and a fake cripple; her peers created group chats about her where they voted to banish her from the school and from existence. This untenable situation continued over a period of six years; this treatment by her peers interfered with her ability to receive an education from the Defendants. The Defendants were deliberately indifferent to Ayva's treatment and negligent in their response to Ayva's persistent complaints. The Defendants were aware of the treatment that Ayva was facing and took no steps to protect her, often taking steps to protect her aggressors. Further, Ayva was subject to retaliation. Employees of the Defendant School district, specifically Defendant Dobbs. Avya was subject to repeated and unfounded criminal complaints at the hands of school employees.  Prior to the incidents described herein, Ayva had had no interactions with Dobbs.

For unknown reasons, Dobbs began targeting Ayva. It can only be assumed that Avya was targeted because of her pursuing bullying complaints against many of her peers.

## PARTIES

1. Plaintiff, Ayva Bezanson ("Ayva"), is an individual who was a minor and a student at Amesbury High School at all relevant times of the complaint.

2. Plaintiffs, Amie and Eric Bezanson ("Mrs. Bezanson" and "Mr. Bezanson"), are married individuals, residing in the Commonwealth of Massachusetts. As the parents of Ayva Bezanson, they bring this claim on behalf of themselves.

3. Defendant, Amesbury Public Schools ("APS"), is an educational institution located in Essex County.

4. Defendant City of Amesbury is a municipality located in Essex County.

5. Defendant, Rachael Dobbs, ("Dobbs") was an individual employed by Amesbury Public Schools at all times relevant to this Complaint.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is lawful pursuant to 28 U.S.C., § 1331 because the issues of law presented in this Complaint concern matters of federal statutory law.

7. Venue is proper in this District pursuant to 28 U.S.C., § 1391(b) because all Defendants are considered residents of Massachusetts and because the events giving rise to the claims occurred in Massachusetts.

## FACTS

8. APS is a public school system which maintains educational institutions in the Commonwealth of Massachusetts and receives federal funds and assistance to finance its operation.

9.      At all times relevant and in all actions described in this Complaint, APS, and its agents, acted under the color of law, under the color of their authority as members of the Amesbury Public School System, and within the scope of their employment within the Amesbury Public School System.

10.     At all times relevant to this Complaint, Ayva was a student in the Amesbury Public School System at Amesbury High School ("AHS").

11.     At all relevant times to this Complaint, Elizabeth McAndrews ("McAndrews") was the superintendent the Amesbury Schools.

12.     At all relevant times to this Complaint, Glen Gearin ("Gearin") was the Assistant Principal and Athletic Director of Amesbury High.

13.     At all relevant times to this Complaint, Danielle Ricci ("Ricci") the principal of AHS.

14.     At all relevant times to this Complaint, Alina Lingley ("Lingley") was the assistant principal of AHS.

15.     At all relevant times to this Complaint, Elisabeth Shorter ("Shorter") was employed as the School Nurse of the Amesbury School District and Ayva's designated as "safe person" under her 504 plan.

16.     Ayva experienced bullying in elementary and middle school, and her parents consistently raised concerns with the district. As early as November 2015, Ayva's mother, Amie Bezanson, reported bullying by two students to the school district, putting the district on notice of ongoing issues.

17.     Avya was fearful to walk the halls; she ate her lunches in the bathroom or guidance. She suffered harassment and humiliation on a daily basis, and the defendants did nothing to protect her.

18.     During her 8th grade year, Ayva's father, Eric Bezanson, informed the Middle School Principal's office that Ayva was still being bullied, and that the behavior had persisted for over a year.

19.     The Bezanson family was directed to follow up with the Middle School guidance counselor, Caitlin Bailey, which they did, but they never received a response to their phone calls or emails.

20.     During this time, Ayva herself sought help from the nurse, and the guidance counselor, but her efforts were unsuccessful.

21.     Upon information and belief, the Middle School failed to take meaningful steps in response to Avya's bullying, including but not limited to failing to follow up with Mr. Bezanson, failing to speak with Ayva about the bullying, failing to create a safety plan, and failing to initiate a bullying investigation.

22.     Avya started high school at AHS in the Fall of 2020.

23.      That fall, Ayva was diagnosed with depression and anxiety.

24.     Ayva's parents notified the school district about Ayva's mental and emotional challenges.

25.     That same year, Ayva was also diagnosed with a physical disability — a bone cyst that made walking painful and required her to use crutches.

26.      Plaintiffs notified Assistant Principal Lingley that Ayva would be attending school on crutches and wearing a brace due to the bone cyst.

4

27.    Parents requested a Section 504 plan with accommodations to include leaving class early to reach her next class on time, to ask a peer for assistance with books, if necessary, to go to the nurse's office at any time for pain control and rest, additional excused absences to seek treatment, and to hold the keys to the elevator.

28.    Despite knowing about Avya's mental and physical disabilities, the district denied the Plaintiffs' requests for a 504 plan and provided limited informal accommodations such as elevator and nurse office access, thus limiting Avya's rights.

29.    The Defendants provided no accommodations for Avya's mental and emotional wellbeing.

30.    In December 2020, Ayva met with Assistant Principal Langley to report an instance of cyber bullying targeting Ayva. She had screenshots of the behavior and was told by Assistant Principal Langley to send them to him in an email. Mr. Bezanson contacted School Resource Officer Troy Burrell and Assistant Principal Gearin to follow up on the incident of cyberbullying reported by Ayva.

31.    Officer Burrell confirmed that he forwarded the email to Assistant Principal Gearin; however, the Plaintiffs never heard from Assistant Principal Gearin.

32.    In January 2021, emergency services were called to the Bezanson home. Ayva was transported to the Anna Jacques Emergency Department due to her escalating mental health crisis, including symptoms of anxiety, depression, and self-injurious behavior.

33.    Because the parents had notified the school, the district was aware that Ayva was experiencing significant emotional distress, including depression, anxiety, and self-harm.

34.    Despite this, the administration failed to suggest an evaluation for an Individualized Education Program (IEP), or a 504 Plan based on her mental health needs.

35.     On February 11, 2021, Mr. Bezanson met with Principal Ricci to discuss the ongoing harassment and bullying Ayva was enduring — harassment tied to her sex, physical disability, and mental health diagnoses.

36.     Principal Ricci took no meaningful action following this meeting and in doing so, failed to follow its own bullying prevention and intervention policies.

37.     On or about October 5, 2021, Ayva met with Assistant Principal Lingley, where she shared that she had been made aware of a disturbing group chat in which she was the target. Ayva shared this information with Assistant Principal Lingley in person and through email, including screenshots of the cyberbullying.

38.     In the group chat, approximately 15-20 students called Ayva a "whore", "bitch" and a "fake cripple." Students suggested "someone kick out her crutches," "expel her", and "kick her out of the school."  The group conducted a "banish" Ayva poll, and one student went so far as to suggest that they "banish her not just from school [but] from existence."

39.     Upon receipt of a report of bullying, the school must assess and ensure the safety of the target and then the principal or their designee must promptly and thoroughly investigate the incident.

40.     Under their policy, APS is required to notify the parents of both the target and the aggressor in the bullying incident.

41.     Following an investigation, the findings must be documented in writing specifying whether bullying occurred and what disciplinary or corrective action to be taken.

42.     These policies and protocols were not followed. APS did not take any steps to assess and ensure Avya's safety, they did not conduct a thorough bullying investigation, and no formal reporting forms were filed, nor did they create a Safety Plan for Ayva.

43.     Alarmingly, the parents were not notified by the school of the cyberbullying.

44.     On or about October 11, 2021, Ayva returned to Assistant Principal Lingley's office to report retaliation for reporting the group chat the prior week. This retaliation included but was not limited to, the students taunting her in the hallways and making comments about Avya being a "rat."

45.     AHS did not follow up with Ayva about the bullying, did not create a Safety Plan for her, did not contact her parents, and did not conduct a bullying investigation or take action to discipline the students involved or take any corrective or protective action whatsoever.

46.     During the week of December 3, 2021, Mr. and Mrs. Bezanson requested to meet with Principal Ricci and Assistant Principal Lingley to discuss the ongoing bullying and unsafe environment for Ayva.

47.     In this meeting, Principal Ricci and Assistant Principal Lingley denied Ayva had been bullied and denied the existence of any internal records detailing Ayva as the target of bullying and harassment.

48.     No mention was made to the parents about the Snapchat group chat Ayva reported to Principal Lingley on October 5, 2021. At this point, Mr. and Mrs. Bezanson still did not know about the cyberbullying.

49.     Due to the ongoing bullying and harassment Ayva had faced at the school, the lack of action and support from the administration, and the administration's denial of Ayva ever being the subject of bullying and harassment, Ayva lost all trust in the administration and did not feel safe during meetings with school administration.

50.     On December 9, 2021, Ayva met with Rachael Dobbs, who was purportedly investigating an incident related to a friend of Avya's and Dobbs brought Ayva into her office to discuss the matter. Ayva was neither the target nor the aggressor in this incident.

51.     On December 9, 2021 Ayva was pulled out of classes by Dobbs approximately three times for a total amount of time of over four hours.

52.     At one point, Ayva's phone was taken from her. She was put in a room alone for a long period of time.

53.     Ayva's parents were not notified that she was being removed from class or that she was being questioned as part of an investigation.

54.     At this time, due to AHS's handling of prior bullying complaints made by Ayva, trust between her and the school had completely broken down.

55.     Ayva, believing she needed to protect herself, recorded one of the meetings with Dobbs on December 9, 2021.

56.     Dobbs later discovered Ayva had recorded their interaction, and she informed the School Resource Officer she wanted to pursue charges against Ayva.

57.     As stated in the incident report, Guilmette, the School Resource Officer (SRO), recommended against pursuing charges and said that school discipline as the best course of action.

58.     The very next day after meeting with Dobbs, on December 10, 2021, Ayva learned from a peer that another student made a death threat against her.

59.     Ayva was distraught and unsuccessfully sought help in the nurse's office, but the nurse was not in her office.

60.    Not able to find anyone to support her, Ayva hid in the bathroom and called her mother, who came to the school.

61.    When Mrs. Bezanson arrived at the school, concerned for her daughter, she was told that no one in the administration was available to meet with her and no one at the school could help her despite the seriousness of the situation.

62.    That same day, Ayva's parents, on her behalf, filed a police report concerning the death threat made to Ayva. The Plaintiffs were informed that the police would send a copy of the complaint to the SRO and to follow up with the school administration.

63.    According to the police report, SRO Guilmette was contacted, and he said that he would discuss the incident with the administration and put in place a safety plan.

64.    On information and belief, in response to the death threat, the school did not file a bullying report, discuss a safety plan, take steps to protect Ayva, or notify the police of the incident.

65.    On December 13, 2021, Mrs. Bezanson contacted Superintendent McAndrews about the ongoing bullying, the death threats, and the unsafe environment of AHS.  The Superintendent did nothing regarding the Plaintiffs' concerns and instead responded that the family already planned to meet with Dr. Ricci. Superintendent McAndrews offered no other solutions, support or follow-up.

66.    When Mrs. Bezanson asked AHS administration and Superintendent McAndrews how the school would keep Ayva safe, she was told that the matter could not be discussed any further. Ayva missed the following three days of school as the school would not guarantee she would be safe on their premises.

67.     On December 15, 2021, Dobbs filed a wiretapping charge against Ayva using an Amesbury School District computer to write her complaint during working hours and with her school email address.

68.     A wiretapping charge carries a penalty of two to ten years.

69.     The Bezanson family was fearful that they would lose their daughter to the criminal justice system.

70.     The parents experienced significant anxiety about the repercussions of Dobbs' unfounded criminal complaint against their daughter.

71.     On or about December 16, 2021, SRO Guilmette called the Plaintiffs and stated that "we dropped the ball." It was clear to the Plaintiffs that SRO Guilmette was referring to the fact that the school did not follow up with Ayva about the bullying, death threats, or hostile environment, did not create a safety plan, and did not conduct a bullying investigation.

72.     During the winter of 2021, the parties participated in several meetings discussing the ongoing issues between them. Present in those meetings were various members of the staff including Assistant Principal Gearin, Assistant Principal Lingley, Principal Ricci, Nurse Shorter, and in some instances a police officer. The Amesbury school defendants continued to deny that any bullying, harassment, or death threats ever happened to Ayva, and the Plaintiffs continued to ask that the school investigate.

73.     On January 6, 2022, Mr. Bezanson met with Assistant Principal Gearin.

74.     Assistant Principal Gearin initially denied having any knowledge about the bullying events and then reversed positions and admitted to knowledge of cyberbullying and death threats. He further admitted to knowledge of the group chat previously reported by Ayva on October 5, 2021.

75.     Assistant Principal Gearin questioned the source of Mr. Bezanson's knowledge of the incident.

76.     In this meeting, Assistant Principal Gearin, who also served as the athletic director behaved in an unprofessional manner and implicitly threatened the Plaintiffs' older daughter, a senior and a softball player, asking her parents if they wanted her "to have a good season and/or play."

77.     On February 14, 2022, Plaintiffs' counsel at the time sent a letter to APS informing them of the events hereinabove. Counsel never received a response.

78.     On March 24, 2022, Ayva was subject to another bullying incident, when a group of 10 to 12 students approached Ayva while she was sitting in the hall with a friend, mocked her, called her names, blew kisses at her, and singled her out for ridicule.

79.     Ayva reported this incident to the school nurse. Nurse Shorter did not report it to the administration and she did not complete a bullying report as required under the APS bullying reporting and prevention policy

80.     Mrs. Bezanson reported this incident to Assistant Principal Lingley via email.

81.     On March 25, 2022, the Plaintiffs met with school officials, including Assistant Principals Gearin and Lingley.

82.     At this meeting, Assistant Principals Gearin and Lingley knowingly and purposefully falsified bullying reporting forms in which the Defendant's noted that Ayva and the students involved had no previous instances of bullying despite multiple reports of bullying by Ayva over the course of several years.

83.    On March 25, 2022, Assistant Principal Lingley and the administration designated the nurses' office as a "safe place" for Ayva. No other safety measures were put into place for Ayva at that time.

84.    On March 30, 2022, Ayva was subjected to another instance of bullying involving the same students as the March 25, 2022, incident. As Avya was leaving the school she was followed by several students who made humiliating and harassing comments toward Avya.

85.    Mr. Bezanson filed a bullying complaint.

86.    Again, Assistant Principals Gearin and Lingley knowingly and purposefully falsified bullying reporting forms in which the Defendants noted that Ayva and the students involved had no previous instances of bullying.

87.    On April 7, 2022, Ayva was denied an IEP. The Plaintiffs allege this was retaliatory for Ayva continuing to report the bullying she experienced at AHS.

88.    On April 8, 2022, two years after first requesting a 504 plan and sharing with the district Avya's physical and mental disabilities, a plan was implemented.

89.    On April 12, 2022, Mr. Bezanson emailed the Amesbury school committee regarding the inadequacy of the responses of the administration to the bullying complaints made by his family. He never heard back from anyone.

90.    On May 5, 2022, the district completed their investigation, concluding that other students had not bullied Ayva and that they did not substantiate the claims made in the March 25th incident reports.

91.    On May 6, 2022, the Plaintiffs filed a Problem Resolution System ("PRS") complaint with the Department of Elementary and Secondary Education ("DESE"). The complaint alleged that Amesbury failed to investigate and respond to several reports of bullying

and failed to address Ayva's anxiety and depression, including but not limited to failing to provide Ayva with a 504 or IEP plan. The complaint included a written narrative of events to date and evidence of incidents of Snapchat bullying, emails to the school, police reports, 504 plan, and the district's finding of no eligibility for IEP.

92.    On May 18, 2022, ASP received notification from DESE that the Department was opening an investigation into the district and that the department had forwarded a portion of the matter to the Office for Civil Rights ("OCR") for further investigation.

93.    On May 19, 2022, Ayva was experiencing heightened stress and anxiety and chose to go to the nurse's office, her designated safe space.

94.    While in the nurse's office, Ayva discussed the criminal charges filed by Dobbs against her.

95.    This private conversation was overheard by another student who reported it to Dobbs.

96.    Upon hearing about this conversation, Dobbs, who still had criminal charges pending against Avya, barged into the nurse's office with Ayva inside, despite her knowledge and understanding that the nurse's office was a designated safe space for Ayva.

97.    On May 20, 2022, SRO Burrell spoke to Dobbs regarding the interaction between Avya and Dobbs. Although SRO Burrell recognized that the school should handle this event and communicated this to Dobbs, she filed criminal charges of witness intimidation and obstruction of justice against Ayva.

98.    A subsequent investigation into May 19, 2022, incident between Dobbs and Ayva found that Ayva did not break any school rules, direct threats or profanity toward Dobbs or act in any way that was inappropriate.

99.    On June 10, 2022, APS sent an investigation report and its conclusion to DESE in response to the PRS complaint.

100.    On or about July 14, 2022, the OCR opened an investigation into disability harassment, retaliation, and sexual harassment suffered by Ayva.

101.    In August of 2022, the intimidation charges filed by Dobbs against Ayva were dismissed.

102.    On January 5, 2023, DESE issued findings of noncompliance and requirement of corrective action to APS.

103.    Specifically, DESE found that APS failed to comply with their bullying and prevention polices, failed to notify the parents of bullying and harassing behavior against Ayva, and failed to properly investigate the bullying allegations.

104.    As a result of the Defendants' actions and inactions, Ayva engaged a therapist to help her with the mental anguish and psychological and emotional distress caused by the APS', the impact of false legal proceedings being initiated against her, the violations of her civil rights and due process rights, the humiliation, pain and suffering, embarrassment she suffered, and the impact to her reputation, honor, integrity, good name, liberty, and past and future education opportunities.

105.    Avya's doctor diagnosed her with severe depression and anxiety and placed her on medication.

106.    On October 4, 2023, a M.G.L. c. 258 presentment letter was delivered to the chief executive officer for the City of Amesbury advising it of the Plaintiffs' allegations contained hereinabove.

**COUNT I**
**Violation of 42 U.S.C. § 1983 and § 1988)**

**(Amesbury Public Schools and the Town of Amesbury)**

107.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

108.    APS at all times relevant to this Complaint, was acting under the color of state law.

109.    APS through its failure to act and/or adopt policies to prevent the pervasive sexual harassment and bullying Ayva faced, acted to unlawfully deprive Ayva of her access to constitutionally guaranteed educational benefits and otherwise violated Ayva's civil rights as described in this Complaint above.

110.    APS failed to provide Ayva with constitutionally guaranteed educational benefits by failing to provide her with accommodations.

111.    APS's actions and inactions were a direct and proximate cause of Ayva's constitutional deprivation and constitute violations of 42 U.S.C. § 1983 and § 1988.

112.    APS's statutory violations have caused and continue to cause Ayva harm.

**COUNT II**
**Violation of 20 U.S.C. § 1681 -1686**
**(Amesbury Public Schools and the Town of Amesbury)**

113.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

114.    APS was at all times relevant to this Complaint, acting under the color of state law.

115.    APS through its failure to act and/or adopt policies to prevent the pervasive sexual harassment and bullying Ayva faced, acted to unlawfully deprive Ayva of her access to constitutionally guaranteed educational benefits.

116.    APS's actions and inactions were a direct and proximate cause of the constitutional deprivation Ayva suffered and constitute a violation of 20 U.S.C. § 1681-1686.

117.    APS's statutory violation has caused and continues to cause Ayva harm.

### COUNT III
**Disability Discrimination in Violation of 42 U.S.C. 12101, et seq.**
**(Amesbury Public Schools and the Town of Amesbury)**

118.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

119.    APS was at all times relevant to this Complaint, acting under the color of state law.

120.    APS's conduct, as alleged above, constitutes unlawful disability discrimination in violation of the Americans with Disabilities Act, 42 U.C.C. 12101, et seq.

121.    As a direct and proximate result of the Defendants' unlawful disability discrimination in violation of the Americans with Disabilities Act, 42 U.C.C. 12101, et seq., Ayva has suffered emotional distress and anguish of mind and continues to suffer harm.

### COUNT IV
**Failure to Accommodate in Violation of 42 U.S.C. 12101, et seq.**
**(Amesbury Public Schools and the Town of Amesbury)**

122.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

123.    APS was, at all times relevant to this Complaint, acting under the color of state law.

124.    APS's conduct, by failing to adhere to Ayva's IEP as alleged above, constitutes unlawful failure to accommodate a disability in violation of the Americans with Disabilities Act, 42 U.C.C. 12101, et seq.

125.    Plaintiffs took all appropriate steps to work with APS to accommodate Ayva's disabilities.

126.    APS and its employees failed to timely effectuate a 504 plan and an IEP plan designed to accommodate Ayva's disabilities, causing Ayva further harm and incurring harm.

127.    As a direct and proximate result of the Defendants' unlawful disability discrimination, in violation of the Americans with Disabilities Act, 42 U.C.C. 12101, et seq., Ayva has suffered emotional distress and anguish of mind.

**COUNT V**
**Negligence**
**(Amesbury Public Schools and the Town of Amesbury)**

128.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

129.    Ayva's care, welfare, and physical custody were entrusted to APS during school and related activities.

130.    APS owed Ayva, as a minor student at one of its schools, a duty to protect her when entrusted in their care.

131.    APS owed Ayva, a minor, a special duty of care – in addition to the duty of ordinary care – to protect her from harm.

132.    APS by and through its agents, knew or should have known of the harm and likelihood of future harm posed against Ayva.

133.    APS breached the duty of care it owed to Ayva by allowing students to repeatedly and pervasively sexually harass, abuse, and bully Ayva, by failing to adequately supervise AHS students, by failing to institute or enforce a safety plan, and by failing to investigate or otherwise prevent violations thereof properly.

134.    Ayva, as a result of APS's actions and inactions, suffered and continues to suffer harm.

**COUNT VI**
**Negligent Supervision**
**(Amesbury Public Schools)**

135.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

136.    Ayva's care, welfare, and physical custody were temporarily entrusted to APS during school and related activities.

137.    APS owed Ayva, as a minor student at one of its schools, a duty to protect her when Plaintiffs entrusted her to APS's care.

138.    APS owed Ayva, a minor, a special duty of care – in addition to the duty of ordinary care – to protect her from harm.

139.    APS's failure to supervise and properly train staff caused harm to Ayva.

140.    APS breached the duty of care it owed to Ayva by allowing the administration and staff to disregard its bullying procedures and policies, falsely filling out forms, and failing to protect Ayva's safety.

141.    Ayva, as a result of APS's actions and inactions, suffered and continues to suffer harm.

## COUNT VI
### Negligent Hiring and Retention
### (Amesbury Public Schools)

142.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

143.    Ayva's care, welfare, and physical custody were temporarily entrusted to APS during school and related activities.

144.    APS owed Ayva, as a minor student at one of its schools, a duty to protect her when Plaintiffs entrusted her to APS's care.

145.    APS owed Ayva, a minor, a special duty of care – in addition to the duty of ordinary care – to protect her from harm.

146.    APS by and through its agents, knew or should have known of the harm and likelihood of future harm posed against Ayva by its administrators, staff, and personnel through

by their failure to exercise reasonable care including but not limited to allowing students to repeatedly and pervasively sexually harass, abuse, and bully Ayva, by failing to institute or enforce a safety plan, by failing to investigate or otherwise prevent violations thereof properly and by knowingly, recklessly or negligently hiring and retaining individuals including but not limited to Dobbs, who repeatedly failed to meet their duty to protect Ayva, to ensure her civil rights, to comply with state and federal law, who retaliated against Ayva for asserting her rights, and who denied Ayva fair access to education.

147.    Despite Plaintiffs contacting the Superintendent and School Committee about the harm faced by Ayva, APS allowed for students to students to repeatedly and pervasively sexually harass, abuse, and bully Ayva, perpetuated their staff's failure to institute or enforce a safety plan, and perpetuate their staff's failure to investigate or otherwise prevent violations thereof properly.

148.    Ayva as a result of APS's actions and inactions, suffered and continues to suffer harm.

**COUNT VII**
**Negligent Infliction of Emotional Distress**
**(Amesbury Public Schools)**

149.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

150.    At all times relevant to this Complaint, APS and its agents knew, or in the exercise of ordinary care should have known, that unless APS and its agents ceased to engage in the aforementioned acts or intervened to protect Ayva from the acts of the other students as alleged herein, that the conduct would continue, thereby subjecting Ayva to personal injury and emotional distress.

151.    Ayva, as a result of APS's actions and inactions, suffered and continues to suffer harm, including significant emotional distress resulting in her seeking therapeutic treatment and maintenance with medication.

## COUNT VIII
### Deliberate Indifference
### (Amesbury Public Schools)

152.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

153.    At all times relevant to this complaint, Ayva was subjected to severe, pervasive, and objectively offensive harassment and bullying. This harassment caused Ayva to be deprived of educational opportunities and benefits. APS knew of the harassment and bullying, which occurred in its programs and activities.

154.    APS was deliberately indifferent to Ayva's harassment and bullying, and its response, or lack thereof, is clearly unreasonable in light of the known circumstances.

155.    Ayva, as a result of APS's actions and inactions, suffered and continues to suffer harm.

## COUNT IX
### Abuse of Process
### (Rachael Dobbs)

156.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

157.    At all times relevant to the complaint, Ayva was a student with APS and Dobbs was a guidance counselor.

158.    Dobbs caused two baseless juvenile criminal complaints to be filed against Ayva for an ulterior purpose.

159.    Dobbs' filings against the Plaintiff were with an ulterior purpose to harass and intimidate Ayva.

160.    As a result of Dobbs' filing of criminal complaints, Ayva was harmed.

## COUNT X
**Malicious Prosecution**
**(Rachael Dobbs)**

161.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

162.    At all times relevant to the complaint, Ayva was a student with APS, and Dobbs was a guidance counselor.

163.    Dobbs caused two baseless juvenile criminal complaints to be filed against Ayva for an ulterior purpose.

164.    At the time of filing the complaints, Dobbs did not have a reasonable belief that the filings were justified.

165.    Dobbs, by filing the complaints, sought to harass and intimidate Ayva.

166.    Dobbs caused litigation to be brought without probable cause with malicious intent and the litigation was resolved in favor of Ayva.

167.    Due to the Defendants' actions, Ayva was harmed.

## COUNT XI
**Loss of Consortium**
**(Rachael Dobbs)**

168.    Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

169.    Amie and Eric Bezanson are the parents of Ayva and the proper parties to bring a suit.

170.    As a direct and proximate cause of Dobb's Abuse of Process and Malicious persecution and APS's negligence, Mr. and Mrs. Bezanson suffered damages and severe emotional distress, and they were deprived of their daughter's society and companionship.

171.    The charges faced by Avya when she was 16 years old carry a penalty of 2 to 10 years.

172.    Dobb's unfounded allegations caused significant turmoil and fear in a family that they would lose their daughter and that she would face time in jail. Forever altering her life and the fabric of their family.

173.    Plaintiffs have suffered and continue to suffer harm.

**WHEREFORE** Plaintiffs demand judgment against all Defendants in the full amount of their damages, plus interest, costs, and attorneys' fees.

### PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Plaintiffs,
Eric Bezanson, Amie Bezanson,
and Ayva Bezanson,
By their attorney,

*Sol J. Cohen*

_____

Sol J. Cohen, Esq.
BBO # 630776
Kerstein, Coren & Lichtenstein, LLP
60 Walnut Street, 4th Floor
Wellesley, MA 02481
(781) 997-1600
EMAIL:  scohen@kcl-law.com

DATE:  May 21, 2025