United States District Court
District of Massachusetts

|  |  |
|---|---|
| Ayva Bezanson, et al., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Rachael Dobbs, et al., )<br>)<br>Defendant. )<br>) | Civil Action No.<br>25-11270-NMG |

MEMORANDUM & ORDER

**GORTON, J.**

Ayva Bezanson ("Ayva") and her parents ("Mr. Bezanson" and "Ms. Bezanson," collectively "plaintiffs") have filed suit against Rachel Dobbs ("Dobbs"), Ayva's high school guidance counselor, and Amesbury High School ("AHS"), the school Ayva attends. Plaintiffs allege various torts stemming from bullying experienced by Ayva at AHS. Pending before the Court are two motions to dismiss filed by defendant Dobbs. The first motion moves to dismiss the complaint for failure to state a claim pursuant Fed.R.Civ.P. 12(b)(6) (Docket No. 23), and the second is a "special motion" to dismiss pursuant to the Massachusetts Anti-SLAPP statute, M.G.L. c. 231, §59H (Docket No. 25). For the following reasons, both motions will be allowed, in part, and denied, in part.

-1-

I.  **Background**

   **A. Facts**

   Ayva enrolled as a student at AHS in 2020. During that school year, Ayva was diagnosed with a bone cyst that required her to use crutches and wear a brace. She alleges that the disability subjected her to bullying from her classmates for a prolonged period.

   In December, 2020 Mr. Bezanson reported to AHS an instance of cyber bullying targeting Ayva. In October, 2021, Ayva discovered a group chat of around 15 to 20 students where offensive language was used about Ayva's sex and physical disability. In March, 2022, Ayva was approached by 10 to 12 students who mocked her and then bullied her in another incident five days later. Dobbs and AHS were made aware of these incidents but no action was ever taken. In May, 2022, plaintiffs filed a Problem Resolution System complaint with the Massachusetts Department of Elementary and Secondary Education ("DESE").

   Plaintiffs' claims, as related to this motion, arise from two distinct events that occurred in December, 2021, and May, 2022.

   **1. The December Report**

   In December, 2021, defendant Dobbs brought Ayva to her office to question her about an incident involving another

-2-

student in which Ayva was neither the target nor the aggressor. Plaintiffs allege that Ayva was distrustful of school administrators and, as a result, recorded that meeting without Dobbs' consent.

Dobbs became aware of the recording and reported the incident to the school administration, indicating that she contemplated pursuing criminal charges. In her affidavit supporting her special motion to dismiss, Dobbs states that she had no knowledge of the recording at the time and did not consent to being recorded. Further, Dobbs alleges that 1) the recording was disseminated among other students jeopardizing the integrity of her investigation and 2) disclosed potentially confidential medical details of other students.

Dobbs conferred with the AHS school resource officer Troy Burrell ("SRO Burrell") and was advised that she could seek the school's intervention or file a report with the Amesbury Police Department ("APD"). Plaintiffs maintain that Dobbs also conferred with her father, a retired APD detective, who advised her to press charges. In December, 2021, Dobbs filed a criminal complaint against Ayva alleging violations of Massachusetts wiretapping laws ("the December Report").

As a result of the December Report, Ayva was formally charged with wiretapping and entered into a juvenile diversion program to avoid trial. A magistrate judge found Dobbs'

December Report to be exaggerated and recommended that she drop the charges which she refused to do.

### 2. The May Report

In May, 2022, Ayva was present in the nurse's office, which had previously been designated as her "safe space," and discussed the December Report with the nurse. The conversation was overheard by another student who promptly reported it to Dobbs who then went to the nurse's office to investigate.

Soon thereafter, Dobbs again met with SRO Burrell about filing another criminal complaint. Plaintiffs allege that Dobbs was told that the school should handle the matter internally but that she then contacted the APD and filed another criminal complaint against Ayva concerning the nurse's office incident ("the May Report"). As a result of the May Report, Ayva was charged with witness intimidation and obstruction of justice. A subsequent investigation found that Ayva did not violate any school rule or act inappropriately. Further, in July, 2022, a magistrate judge found no probable cause for the charges and dismissed the case against Ayva.

Plaintiffs allege that, shortly before the May Report, AHS had been notified by DESE that the district was being investigated for failing to address Ayva's reports of bullying and her alleged injuries. They assert that AHS was also

-4-

notified that DESE referred part of Ayva's complaint to the Office for Civil Rights ("OCR") for further investigation.

### B. Procedural History

Plaintiffs filed the amended complaint against both Dobbs and AHS in May, 2025. AHS answered the amended complaint in July, 2025, and Dobbs contemporaneously filed both a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (Docket No. 23) and a special motion to dismiss pursuant to M.G.L. c. 231, §59H (Docket No. 25). Plaintiffs timely opposed both motions.

## II. Special Motion to Dismiss Pursuant to M.G.L. c. 231, §59H

### A. Legal Standard

The Massachusetts Anti-SLAPP (Strategic Lawsuit Against Public Participation) is designed to resolve quickly lawsuits aimed at deterring individuals from exercising their right of petition. Keegan v. Pellerin, 76 Mass. App. Ct. 186 (2010).[1] The Massachusetts Supreme Judicial Court ("the SJC") has described a two-step process by which courts should evaluate special motions to dismiss filed under §59H. First, the movant must make a threshold showing through pleadings and affidavits that the claims against her are based solely upon her petitioning activity. Bristol Asphalt, Co. v. Rochester Bituminous Prods., Inc., 493 Mass. 539, 555 (2024). Thereafter, the burden shifts

---

[1] The Anti-SLAPP statute (state law) applies in federal court pursuant to the Erie doctrine. See Godin v. Schencks, 629 F3d 79, 85-92 (1st Cir. 2010).

to the non-movant to show that the petitioning activity lacked any reasonable factual support or arguable basis in law. Id. at 557.

### B. Application

Here, Dobbs has met her burden of showing that the claims against her are based solely upon her petitioning activity. Plaintiffs brought claims against Dobbs for malicious prosecution and abuse of process, both of which are based entirely upon the filing by Dobbs of two criminal complaints. Plaintiffs allege that the filing of those complaints amounted to more than just petitioning activity because of Dobbs' retaliatory intent. That does not, however, alter the fact that the operative acts complained of are the filings of criminal complaints. The Court concludes that Dobbs has therefore met her burden under the first prong of the Bristol Asphalt test.

Next, plaintiffs must show that the petitioning activity lacked any reasonable factual support or arguable basis in law. Because both the malicious prosecution and abuse of process claims are predicated upon the two separate criminal complaints, those incidents must be evaluated separately.

### 1. December Report

Dobbs' first criminal complaint alleged that Ayva violated Massachusetts wiretapping laws by recording their conversation without Dobbs' consent. Massachusetts law forbids a person from

-6-

recording an oral conversation without the consent of all parties to that communication. M.G.L c. 272, §99.

Here, the facts presented in both the complaint and affidavits demonstrate that Ayva used her cell phone to record the conversation with Dobbs without her consent. Because that activity closely aligns with activities prohibited by state law, plaintiffs have failed to meet their burden of showing that the December Report lacked any reasonable factual support or arguable basis in law. Counts IX and X will therefore be dismissed with respect to the wiretapping charges reported in the December Report.

### 2. May Report

The May Report contains allegations that Ayva committed some sort of crime with respect to her May, 2022, conversation in the nurse's office. Plaintiffs' complaint, and subsequent filings, refer to the May Report as pressing charges against Ayva for witness intimidation and obstruction of justice. It is not clear from the pleading and affidavit, however, that the May Report indeed accused Ayva of a crime. Nonetheless, the parties appear to agree that the complaint resulted in charges being filed against Ayva.

With respect to the May Report, the Court concludes that plaintiffs have met their burden under Bristol Asphalt. Based upon the pleading and affidavit, the May Report lacked any

reasonable factual support or arguable basis in law. The record shows that Ayva, a minor student, was discussing her pending criminal charges with the school nurse. That conversation took place in the nurse's office, her designated "safe space," and happened to be overheard by one or more other students. Such conduct cannot be fairly construed as being criminal. The special motion to dismiss will therefore be denied with respect to the activity described in the May Report.

### III. Public-Employee Immunity

Defendant Dobbs next asserts that she is entitled to public-employee immunity from liability under §2 of the Massachusetts Tort Claims Act ("MTCA"). That statute provides that no public employee shall be held liable for injuries caused by negligent or wrongful acts committed while acting in their official capacities. M.G.L. c. 258, § 2. Massachusetts courts have interpreted the statute as barring claims for intentional torts against public employers but not against public employees in their individual capacities. Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 286 n.9 (1985).

Plaintiffs bring claims of malicious prosecution, abuse of process and loss of consortium against defendant Dobbs in her individual capacity. These are intentional torts. Dobbs cannot therefore claim public-employee immunity from liability.

IV. **Motion to Dismiss Pursuant to 12(b)(6)**

A. **Legal Standard**

Defendant Dobbs' second motion to dismiss is filed pursuant to Fed.R.Civ.P. 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6), plaintiffs must state a claim for relief that is actionable as a matter of law and plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering such a determination, a court may consider certain categories of documents extrinsic to the complaint without converting a motion to dismiss into a motion for summary judgment. Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013). For instance, a court may consider documents of undisputed authenticity, official public records, documents central to a plaintiff's claim and documents that were sufficiently referred to in the complaint. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

B. **Application**

Dobbs moves to dismiss Counts IX, X and XII of the complaint. Because this Court will allow the special motion to dismiss Counts IX and X with respect to the December Report, it

-9-

will not address whether those portions of the counts should also be dismissed pursuant to Rule 12(b)(6).

### 1. Count IX - Abuse of Process

To sustain an abuse of process claim, plaintiffs must allege the use of legal process, for an ulterior or illegitimate purpose, that resulted in damages. Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636 (2010). Process refers to papers issued by the court to bring a party within its jurisdiction, Jones v. Brockton Pub. Mkt., 340 N.E.2d 484, 486 (Mass. 1975), and encompasses the filing of criminal complaints, Gouin v. Gouin, 249 F. Supp. 2d 62, 70 (D. Mass. 2003). An ulterior or illegitimate motive must be one that seeks to gain a collateral advantage over the plaintiff. Psy-Ed Corp. v. Klein, 947 N.E.2d 520, 534 (Mass. 2011).

The Court concludes that, although it is a close call, plaintiffs have pled facts sufficient to state a claim for abuse of process. First, they claim that defendant Dobbs filed a criminal complaint with the APD against Ayva which resulted in criminal charges being filed against her. That satisfies the use of legal process for purposes of the tort. Plaintiffs also contend that, during the months preceding this report, they made complaints to both AHS and the DESE about the bullying of Ayva. Resolving all inferences in favor of the non-moving party, the Court concludes that plaintiffs have sufficiently alleged that

Dobbs filed the May Report with the ulterior motive of stopping plaintiffs from filing any further reports. The motion to dismiss will therefore be denied with respect to Count IX.

### 2. Count X - Malicious Prosecution

To state a claim for malicious prosecution, plaintiffs must allege that defendant Dobbs maliciously initiated an action against Ayva without probable cause and that the action was ultimately terminated in plaintiffs' favor. Chervin v. Travelers Ins. Co., 448 Mass. 95, 103 (2006). If an individual induces a police officer or prosecutor to file formal criminal charges, she may be found to have initiated that action. Limone v. United States, 579 F.3d 79, 89 (1st Cir. 2009). A lack of probable cause may be so obvious as to infer malice. Goddard v. Kelley, 629 F. Supp. 2d 115, 130 (D. Mass. 2009).

Plaintiffs have met their burden under this standard. The complaint makes clear that the May Report initiated criminal charges against Ayva that were ultimately dismissed by a magistrate judge. As discussed above, plaintiffs have also pled facts sufficient to show that the May Report lacked any reasonable factual support or arguable basis in law and, in fact, may have been motivated by a desire to discourage the filing of further complaints. Such facts are sufficient to state a claim for malicious prosecution and the motion to dismiss will therefore be denied with respect to Count X.

### 3. Count XI - Loss of Consortium

Finally, Ayva's parents claim loss of consortium against defendant Dobbs for damages incurred as a result of her abuse of process and malicious prosecution against Ayva. In Massachusetts, loss of consortium is a separate cause of action and may be maintained where such loss is shown to arise from torticus injury to one's family member. Limone v. United States, 336 F. Supp. 2d 18, 49 (D. Mass. 2004). Consortium is defined as benefits a person receives from another, including companionship, cooperation and affection. Consortium, Black's Law Dictionary (12th ed. 2024).

The Court concludes that plaintiffs have failed to plead injuries sufficient to state a claim for loss of consortium. Their allegations of injury are limited to fear, anxiety and emotional distress. Such damages are not those contemplated within the meaning of loss of consortium and Count XI will therefore be dismissed.

## ORDER

For the forgoing reasons:

1. The Special Motion to Dismiss Counts IX and X (Docket No. 25) is, with respect to the December Report, **ALLOWED**, but, with respect to the May Report, **DENIED**.

2. The Motion to Dismiss Counts IX, X and XI (Docket No. 23) is, with respect to Count XI, **ALLOWED**, but, with respect to Counts IX and X, **DENIED**.

**So ordered.**

_____
Nathaniel M. Gorton
Senior United States District Judge

Dated: February 25, 2026